1  HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

INTEGRITY STRUCTURES, L.L.C.,

            Plaintiff,

      v.

WINDSOR WINDOW COMPANY, a
foreign corporation; HUTTIG INC.; a foreign
corporation; RIVER CITY WINDOW &
DOOR, INC., a foreign corporation,
            Defendants.

Case No. C09-5100RBL

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

THIS MATTER is before the Court on the following Motions: Defendant Windsor Window's Motion for Summary Judgment [Dkt. # 14]; Defendant Huttig's Motion for Summary Judgment [Dkt. # 30]. Also pending on the docket are Defendant Windsor's Motion to Compel [Dkt. #33]; Defendant Integrity's Motion to Quash [Dkt. # 35] and Defendant Windsor's Motion for Protective Order [Dkt. #39].

The case involves Windsor brand windows and doors purchased by Plaintiff Integrity for a housing development near Westport, Washington, known as Cohasset Beach. Integrity's retail contact for the project was Defendant River City, a building supply retailer. River City provided the orders to Windsor's distributor, Huttig (a self described "commercial distributor of building supplies), which in turn sent them to the window

ORDER
Page - 1

manufacturer, Windsor. According to the Plaintiff, the products did not conform to the sample provided and were defective. As a result, they leaked. Defendant Windsor moves for summary judgment on the basis that the leaks were the result of the "storm of the century" in December 2007. It also argues that its express limited warranty provides only a "repair or replacement" remedy, and Plaintiff's claims fail as a matter of law, because it failed to avail itself of these remedies and now seeks consequential damages.

Defendant Huttig's Motion is based on its claim that it had no contract with Plaintiff Integrity, and its negligence claims against Huttig are barred by the economic loss rule. Integrity argues that the evidence supports its claim that there was a contract, and Huttig's "economic loss" defense depends on the existence of a contract.

Because there are material issues of fact to be resolved before the viability of Plaintiff's claims and the Defendants' defenses may be determined, the Motions for Summary Judgment are DENIED.

**A.     Factual Summary.**

Viewed in the light most favorable to the non-moving party, the evidence establishes the following: Integrity is a general contractor. It is the builder of nine single family homes in a development known as Cohasset Beach in Westport, Washington. In 2007, Integrity approached Huttig's Wayne Weber about obtaining a door and window package for some subset of the nine homes to be constructed. Huttig has a distribution agreement with Windsor to be its "local market expert." Integrity told Weber what it was looking for and where it was to be used. In response, Weber provided a mock up of a Windsor window and assured Integrity that the windows were suitable for the Cohasset Beach ocean environment. Weber was aware that Integrity had also contacted Jeld-Wen windows about the project, and wrote an email reflecting his excitement to "snatch" the contract from them.

Huttig informed Integrity that it would necessarily have to use a retail dealer (River City) to actually sell the Windsor products to Integrity. Huttig and River City agreed that Huttig would be "responsible for doing the takeoffs of the plans and for verifying with the Project Supervisor at Westport." With Huttig's

assistance, River City would be responsible for jobsite walkthroughs and service issues."

Integrity ordered the windows, with written specifications which are detailed in the plaintiff's response [Dkt. #54] River City provided invoices for the various window orders. The windows were delivered in July 2007 and Integrity began installing them in August 2007. Issues arose almost immediately, and Windsor had representatives on site to address them. By October 2007 – before the "storm of the century" – water intrusion issues were discovered. Indeed, according to Integrity, six of the seven homes at issue were completed on the outside prior to the December storm, and the seventh did not have the windows installed until after that event.

On January 25, 2008, Integrity informed Windsor that the purchased windows did not conform to the sample upon which the purchases were based. Windsor, through its representative for this purpose, Anderson windows, inspected the windows and determined a few days later that there was a problem with the manner in which the windows were constructed.

The water intrusion issues and attempted diagnosis and repairs continued through February, March, April and May, when Anderson found that there were problems with the manufacture of the installed windows, which led to the leaks. Windsor apparently acknowledged these issues and sought a statement of damages from Integrity, which was provided (at first in the amount of $83,000.) Additional leaks and manufacturing issues became apparent over time, and the amount was increased to over $100,000.

This litigation followed.

**B.     Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**C.    Windsor's Limited Warranty Defense is not sufficient for Summary Judgment.**

Integrity's claim is that the sample/model window provided by Huttig, along with the written specifications Integrity provided to Windsor and Huttig, provide part of the contract for windows and doors. Specifically, Integrity argues that under Washington's version of the UCC, Windsor warranted that the purchased windows would conform to the sample windows and the written specifications. It claims that the windows did not so conform, and were defective in manufacture.

Windsor's Motion is based primarily on its claim that its standard written limited warranty applies exclusively, and it limits Integrity's remedy to "repair or replacement," and specifically disclaims consequential damages. *See* RCW 62A.2-719. Integrity apparently seeks damages for repairing, including removing and re-installing, the defective windows. Windsor claims that these damages are not recoverable as a matter of law. Windsor also claims that Integrity rejected the "repair or replace" remedy expressly offered to it.

Integrity responds[1] by relying upon another portion of Washington's version of the UCC, RCW 62A.2-313, which provides that specifications and samples which are a part of the bargain are warranties, even if the parties do not use that word:

---

[1] Integrity also argues that this limited warranty provision is not valid under Washington law [RCW 62A.719(3)] because the goods were provided primarily for household use and Windsor did not maintain adequate facilities in this state to carry out its repair or replace warranty. While this is a novel argument, Windsor did utilize the efforts of Anderson Windows in state in a [failed] attempt at repair. Because the Court resolves Windsor's motion on other grounds, it does not reach this argument.

ORDER
Page - 4

(1) Express warranties by the seller are created as follows:

>   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
>   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
>   (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

RCW 62A.2-313.

It is apparently undisputed (and it is established for purposes of summary judgment) that the windows did not conform to either the sample or to Integrity's written specifications, and were in that respect a violation of this express warranty.

Integrity also argues that RCW 62A.2-317 provides "warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant." This section also provides rules for determining which warranty is dominant:

>   In ascertaining that intention the following rules apply:
>   (a) Exact or technical specifications displace an inconsistent sample or model or general language of description.
>   (b) A sample from an existing bulk displaces inconsistent general language of description.
>   (c) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose.

RCW 62A.2-317.

ORDER
Page - 5

Integrity argues persuasively that the written warranty upon which Windsor relies is ambiguous, as it can be read to apply to "installation and use," and its other provisions regarding representations and warranties would be meaningless if Windsor's limited reading was adopted. Instead, it claims, the only reasonable construction is one in which Windsor warranted that the windows it sold would in fact conform to the representations, specifications, and sample which Windsor provided and which formed the basis of the purchase contract from Integrity's perspective.

Windsor claims that the damages sought by Integrity are consequential and incidental, and prohibited by the warranty. Integrity responds that Washington's UCC, RCW 62A.2-714, again provides the relevant authority. Under that section, a buyer is obligated to prove a reasonable basis for ascertaining its damages, and when it does so may recover for the provision of non-conforming goods "damages caused by the seller's breach.*" See Federal Signal Corp. v. Safety Factors*, Inc., 125 Wn.2d 413, 438 (1994). Indeed, the remedy sought by Integrity, repair costs, have been found under this section to be an appropriate measure of damages for breach of warranty. *See Miller v. Badgley,* 51 Wash.App. 285 (1988).

For these reasons, Windsor's claim that the warranty it provided does not, as a matter of law, provide Integrity with the relief it seeks is unsupportable under the applicable law. Its Motion for Summary Judgment on this basis is DENIED.

**D.     Huttig cannot establish that, as a matter of law, it had no contractual relationship with Integrity**.

Defendant Huttig's Motion for Summary Judgment is based on its claim that it was not a party to the purchase contract which resulted in Integrity's purchase of the Windsor windows and doors. Specifically, it argues that the UCC requires that a contract for the sale of goods over $500 requires a writing, and in the absence of such a writing, Integrity's claim is barred by the Statute of Frauds. It acknowledges that it provided "quotes" but emphasizes that the actual purchase orders were entered with

River City. Huttig also argues that the contract claim fails for want of consideration, because Integrity's compliant fails to allege that any consideration flowed from it to Huttig. Finally, Huttig argues that there is no privity of contract between Huttig and Integrity upon which Integrity's warranty claims must be based, because Huttig was "at best, a pass through distributor."

Integrity responds that the UCC provision at issue (RCW 62A.2-201) is actually fairly lenient as to what "writings" are required, and that a number of writings between the parties exist and document the contractual relationship between it and Huttig. Integrity cites White and Summers for the proposition that the UCC statute of frauds permits a party to "(1) produce a writing, (2) that shows a contract has been made, (3) signed by the party sought to be charged [Huttig], which (4) recites a quantity term." I Wright & Summers, *Uniform Commercial Code*, §2. The required writing may be "pieced together" from various sources, including electronic messages, letters, purchase orders, quotes and so forth. Integrity points to a number of documents exchanged and signed or authenticated by the parties, including emails, letters, and quotes, both during Integrity's purchase and during the parties' various efforts to ascertain and remedy the leaking windows. The court has reviewed this evidence, and viewed it in the light most favorable to the non-moving party. Integrity has met its burden of establishing a writing reflecting a contract with Huttig, as required by the UCC.

Integrity also argues that Huttig's conduct is relevant to the issue, and establishes that it was not, as it claims, a stranger to the contract. It also points out that consideration flowed in both directions as a part of the window purchase, a point which is difficult for Huttig to deny in the context of summary judgment, where it admits it was a distributor of the windows purchased and actively sought to obtain the "deal" with Integrity.

In short, the contract defenses asserted by Huttig are insufficient to entitle it to a judgment as a matter of law. Its Motion for Summary Judgment on this basis is DENIED.

### E. Hutting's Economic Loss argument depends on the existence of a contract.

Huttig also argues that, in the absence of a contract, Integrity's claims must be based on negligence. It then argues, circuitously, that the economic loss rule precludes the recovery of the sort of economic damages sought by Integrity here. As both parties acknowledge, this rule "maintains the fundamental boundary between tort and contract law. The rule ensures that a party to a contact cannot recover in tort the risk the parties already allocated through contract." *See, for example, Townsend v. Quadrant Corp.*, 218 P.2d 230, 239 (Wash App. 2009).

The application of this rule to Integrity's alternative negligence claim is dependent on the existence of a contract between Integrity and Huttig. As is discussed above, this is not a question that can be resolved on summary judgment. Nor can it be said as a matter of law that Integrity's negligence claim is necessarily insufficient; it presents questions of fact to be resolved by a jury. Huttig's Motion on this basis is also DENIED.

### F. Discovery Motions.

It appears that the parties have resolved the Motion to Quash [Dkt. #35], and that Motion is Denied as Moot. [*See* Reply, Dkt. #50]. The parties have also resolved the Motion to Compel [Dkt. # 33], except for Windsor's request for sanctions. That Request is DENIED. No response was filed to the Motion for a Protective Order [Dkt. # 39], and it appears that the issue regarding depositions was resolved by the parties' stipulation to extend the Discovery Cutoff [Dkt. #46].

IT IS SO ORDERED.

Dated this 7TH day of January, 2010.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE